Good morning. Good morning. May it please the Court, Joseph Wesson for Petitioner. The two issues present, presented here this morning rather, whether substantial evidence supports the IJ's finding that Petitioner's claim harm did not rise to the level of persecution. And if it is determined that he has suffered past persecution, whether the IJ's finding that Petitioner could safely and reasonably relocate under a well-founded fear presumption has been rebutted. With respect to the first issue, I would submit that the two attacks that the Petitioner suffered at the hands of non-state actor opposition party people did, in fact, rise to the level of persecution. I believe the first attack after being confronted and threatened and Petitioner's request to join the opposition party, he refused. He was kicked and punched in the stomach for five to seven minutes. The second attack presumably, admittedly, was more The IJ perfunctorily discounted the severity of the harm and just concluded that there was no harm that rose to the level of persecution. How would you, how would you distinguish our Pasad case where Pasad was in jail, Pasad was hit in his stomach and kicked from behind. His captors questioned Pasad regarding his support for ethnic Indians. He suffered harm from those, from those, those things that we said. In the area, in this area where we have to show certain things, not that just he was hurt, but that there was, that there was going to be all of these ramifications, how would this be your case different from Pasad? I mean, I understand he got hurt. I understand that. But we've said that these minor types of things, which they, the case says minor types of things, don't measure up to what is needed for this type of case. I would submit, Your Honor, that the conduct of the attackers or the persecutors need not be atrocious and that there is ample precedent in this circuit that it doesn't have to be a near-death experience that someone who has to be punished. Pasad did not, he didn't get out for free. He was beaten and hit, et cetera. And we said in this area, we're trying to distinguish, I guess, between just something you sue for and that there's real animus because of your condition for which you think you now have a right. Yes, I would submit that on a cumulative basis, the combination of the threats and the poignant of a gun at Petitioner, visits to the house by the persecutors, both before he left India and after he left India, and the physical harm that he suffered, on a cumulative basis, would rise to the level of persecution. I would submit that that's what distinguishes this particular case from the Pasad matter. If we assume that he does have harm that rises to the level of persecution, if I might refer to the second issue, whether the well-founded fear of presumption has been rebutted, I would submit that the IJ solely and erroneously focused on the police's persecutor scenario when, in fact, this is not the situation, at least in the instant case. Yeah, that India is a big country, and there's a lot of Hindus all over India. Yes. Granted that India is a large country, and whether Petitioner could safely and reasonably relocate, the individualized analysis under Singh v. Whittaker case, that seemed to be a big issue, that he affirmatively was going to go back to India and advocate for the man party. But we don't have that testimony here, correct? No, we don't, Your Honor. And I would submit that a ventura remand would be appropriate in this case for fact-finding in the first instance. Nobody inquired of Petitioner whether he would continue to advocate for his party if he had to return. And if we have non-State actors as persecutors, Singh v. Whittaker seems to be instructive and relevant. Nobody asked him that. He didn't bring it up himself, right, in any way, in terms of what would happen to him if he went back? No, I believe his testimony was confined to police pursuing him or whether he feared the police. And then the IJ used that opportunity, if you will, to develop the record that whatever country articles were submitted as part of this case, that police as persecutor rebutted the presumption of any well-founded fear that Petitioner may have. Again, I would submit that the IJ solely focused on police as persecutor scenario and didn't factor in non-State actors as persecutors. So a remand would be instructive to further develop the record as to what the current country conditions are and the prevalence of these non-State actors throughout the country of India and whether Petitioner could safely and reasonably relocate either to a general area or to a specific area and not face harm or threats of harm. Well, his specific testimony was that if he moved to another place, he'd have to get a home, and they'd want some I.D. to prove who he was. And then that somehow that information would get all the way back to his hometown and the police would then come and get after him. But the record shows that that only would occur for the big actors, and he admittedly is just a small part of this man party. So why hasn't he — why isn't his proof that he admits that he is an insignificant person in the act and the record that shows they're only after the big people who may be terrorists, why doesn't that show that he can get to parts of India and still be safe? I would submit, Your Honor, that the record is not developed, unfortunately, and maybe a remand is appropriate in this instance, because, again, that would focus on the police as searching for him or he fears police. Even if his fear is objectively reasonable that he fears the police, that — the focus should not be on police as persecutors. It should be — the focus should be on his attackers, the non-State actors. Who? The opposition party, I believe, was Congress Party. The Congress Party all across. And they're — every one of them are involved in this conspiracy. No, what I'm suggesting is that if the record is developed that the Congress Party or opposition party are in control in the majority of the parts of India — Well, they had — your client had a chance to put that on. It wasn't done. It's not in the record. He had a very opportunity to do it. But it seems just for the face of it, it's going to be a tough one to do. They've even had Hindus that have been prime ministers. It's so — it's so mind-boggling that a major party is out to get a person like your client. I'm not saying that it couldn't happen. I'm just saying, from the record, it just doesn't seem logical. Well, if the record is remanded and — No, no, not remanded. The record that we have now — you have the burden of proof. And the record we have now shows, it seems to me, that your argument has some problems. Well, Your Honor, the police in this incident case were unable or unwilling to assist the Petitioner when he reported these two attacks to them after each occasion. Granted, this record does not reflect whether or not he has a fear of the opposition party harming him if he had to go back to India. But, again, it wasn't inquired into at the time. He was represented by counsel? He was. Right. I mean, that is sort of the damned if you do, damned if you don't situation. Sometimes individuals are better without counsel. But he did have a counsel there. And then, actually, it seemed like the judge took care to ask him very specifically about his concerns about moving back, which Judge Wallace just referred to. So we'd be hard-pressed in this situation to say he didn't have a chance to explain. I'm just wondering what the basis for remand would be if we were to follow your recommendation. I would submit simply that if it wasn't inquired into at the lower level perhaps to further develop the record or give a reasonable opportunity for a Petitioner to further develop the record as to his fear if he had to return, that a venture or remand may be appropriate. Thank you. Thank you. Thank you. May it please the Court, your Honor, this is Tim Ramitz on behalf of the United States Attorney General. Welcome back. Thanks. Two issues before this Court, two alternative issues, so the Court doesn't have to find both, but the first issue being that the agency found that he failed to establish past persecution and a well-founded fear of future persecution. If the Court finds the record does not compel a conclusion contrary to that finding, then that's the end of the case. You don't have to reach the alternative conclusion about relocation. Starting with that first finding about past persecution, I think the Board very reasonably found this did not meet past persecution under the Court's precedence and that, well, he was a member of the Akali Dalman Party in India, and he stated that once he started getting politically active, he was participating in a function on his way back. This is in July 1999, I believe. He was on his motorcycle pulled over by some men in a Jeep, Congress Party members, and he was beaten, but by his own description, he wasn't beaten that badly. That was his own testimony describing it as a minor altercation. And his second instance was about a year later where, again, he was coming back from political activities. He was pulled over on his motorcycle, pulled over by a Jeep, and he was hit in the face and the ear, or punched in the face and the ear, and he was hit on the back with a hockey stick and a baseball bat. And he required no significant medical treatment, though he stated he couldn't eat for a week because of the injury to his jaw. He did not state that he had any significant medical treatment in either incident. And that was, I believe, later on he said he saw a Congress Party member flash a gun at him a year later. But that was the sum total of his mistreatment in this case. I think, while reasonable minds could differ, it very reasonably falls under cases like Prasad that the Court has found not to constitute past persecution, at least not to compel that conclusion. So the law is not to compel that conclusion. Ginsburg. It's odd that the board cited Gu, which was the Chinese individual who had kind of been hit by a strap and didn't seem to have any relationship to the situation here, which included two incidents plus the threats. I think Gu is a good example because that's the case that goes through different cases the Court has found, where it explains how in Prasad there was no past persecution, how in another case, Guo, I believe, they did find past persecution. So it's using it as an example to compare and contrast what has previously been found to constitute past persecution. So in the Guo case, for example, it was much more severe. He was detained twice, the first time for a day and a half, and he was beaten, and he was detained again for 15 days, where he was hit with an electric baton until he passed out, or shocked until he passed out. He was tied to a chair and he was beaten with sticks, and he was fired from his job. And that, the Court explained, constitutes past persecution. On the other hand, Prasad, where he was detained for a few hours, he was beaten and interrogated. That did not compel the conclusion that that constituted past persecution, which is an extreme concept, does not include every mistreatment that society deems reprehensible. In this case, where both altercations were over in a matter of minutes and did not require any significant medical treatment or any significant harm, the government says it's reasonable to find that's more in line with a case like Prasad, and it does not constitute past persecution. That's the first part of the case. I suppose what we're struggling with now is we had the Singh case, because we have a lot of Singh cases, but the most recent one, written by our colleague, Judge Smith, for the Court, that deals with how much you have to show in order to, how much has to be shown to see whether or not he can safely relocate. And he says in the case which binds this, and I'd like to have your response to this, relocation analysis consists of two steps. One, whether the applicant could relocate safely, and two, whether it would be reasonable to require the applicant to do so. So that's our new test. So could you specifically address those two questions? Sure. So he never challenged the reasonableness, which typically goes, the argument is, could I find a job there? How could I live there? But what he's challenging is basically is it safe to relocate to this area, because the Congress Party, he believes, will have a reach that can get him wherever he goes. And so what the Singh-Whitaker cites is Malconian for what could be a nationwide threat to someone. When it's the government, you presume a nationwide threat wherever they can relocate. But in this case – Well, the Congress Party. Correct. Which is not always the government. That's the difference, I believe. It's not always the government. So as the State Department report in the record shows, India is a multi-state, where these states are highly autonomous, and they're multi-party. It's a democracy. And so even for a good example, it's a document Petitioner submitted from 2012, which shows even in his state of the Punjab, one of these highly autonomous states, the government was democratically elected to place the Congress Party or to vote them out of power. So the Congress Party was no longer in power in this record, even in his home state of Punjab. His party, the Akali Dalman Party, was voted into power. Of course, there was an odd circumstance – this is an individual deemed credible – where the police told him, well, why don't you just join the Congress Party? That's true. Which is hardly a solution, a long-term solution. No. But otherwise, outside of the Punjab, there's no indication the police would be unwilling or unable to protect him in those locations either, especially where the Congress Party may or may not be in power and may or may not have the political will or ability to seek out and target Sikh separatists. This also goes with the background information, which shows that there is no interest in targeting Sikh separatists outside of the Punjab, unless they're high-ranking militants that are on parole or some other criminal background. That was demonstrated in the hearing. Was there any opposition evidence to that, that they're really only interested in the high-ranking people of the Mann Party? That is, anybody is, whether it's police or Congress Party or whatever. It's only those high-ranking people that would draw the attention of those who would want to perhaps do them harm. There's no evidence besides showing that, yes, they only would perhaps be interested in a high-ranking official, and that's the report from the Australian government in this case. How would — what was his position? Did he have an official position? I didn't find anything in the record on that. His official position was the testimony you quoted earlier, which was when he was asked, what do you fear about relocation? Why couldn't you relocate? And he stated that, I fear they'll have to — I think this was implicating the tenant registration system in India, but he's saying, I have to show my ID to rent an apartment, then the landlord will take my ID and report my identity to the police, and the police will report my identity to the Congress Party. Yeah. Which is a chain of suppositions to begin with, because he doesn't explain why the landlord would tell the police, and why the police in some other state that's not influenced by the Congress Party would tell the Congress Party, and particularly where the background evidence shows that police don't care about anybody unless you're a high-ranking militant. And — but there's nothing in the record that he would call up the local party and tell them about this person? There's nothing like that. And there's also, again, the State Department report, which shows that the local party may not have any power. It's a democracy. The Congress Party might not be the government in that place. Do we know where the specific area is that he was — suggested that he'd relocate? There's no specific area suggested, but this is also the second finding in Singbee-Whitaker, that when you suggest a place for relocation, it just has to be outside the Punjab for these purposes. Do they have a particular state in mind or a particular community in mind that ever comes up? For example, it's clear that there are many parts of India where the majority are Hindus. Is there some — is something in the record that was designated, or was it just left general? It was left general, which the Whitaker case says is — is okay. But there is the Australian government document, which states there are many Sikh communities throughout India, not just — Excuse me. I said it's Hindu. I meant Sikh. It says many Sikh communities outside of the Punjab where there's a large population of Sikhs. And so in any of those locations, that would answer to the reasonableness, whether  But he's never challenged that part of the equation. He's only challenged whether it's safe for him to relocate. And so that's the second alternative finding, which the Court doesn't have to reach if it agrees that the record did not compel the conclusion that established past persecution or well-founded fear of future persecution in this case. But I think the record supports both of these findings. Is it your position that being general this way meets the obligation of the Singh case? I'm not sure. I'm trying to figure out in my own mind. What does they have to prove to show that he can properly relocate? Do they have to get some specific area? Or as you see it, do they have to demonstrate a generality? I think the Singh case answered that and said it can be more general. Outside the Punjab was the answer in Singh that they found sufficient in that case. As long as it's safe, as long as you can show that the police or the Congress Party would have no interest or reach your ability to get him outside of the Punjab. There's nothing in the record that I found that that was decided, whether it could be general or whether it had to be a specific, I want to go to this city. No, that's not in the record. And did the record indicate he, did he in the record say where he wants to go? He did not say. He just said wherever I go, I'm going to be harmed. General. Very general. Okay. Thank you. Thank you. Just briefly referring to Singh v. Whitaker again. It's instructive that in the decision, the court held that a remand was proper, and the court decided that the board had erred in failing to analyze whether Petitioner would be substantially safer in a new location if he were to continue expressing his political opinion. And in the summary of the testimony, the court referenced that Petitioner testified that it would not be possible for him to live outside the Punjab in India because as a man party member, he feared the police. So I don't believe even in this case in Singh v. Whitaker that it was fully developed whether or not he would continue to advocate for the party and how he would so advocate. And in Singh v. Whitaker, a remand was appropriate. I would submit that a remand is appropriate in this case. Thank you. Thank you. Thank you both for the argument this morning. The case just argued is submitted. United States v. McNeil is submitted on the briefs. We'll next hear argument in Genjua v. Newfield.
judges: Wallace, Tashima, McKeown